Good morning. It pleases the court, Emily Urig on behalf of Petitioner Appellate Marcus Rawls. I'd like to reserve two minutes of my time for rebuttal if I am able. This court certified two issues for appeal. The first is whether the trial court violated Mr. Rawls' due process rights by compelling him to take the stand to testify before the jury while shackled. The second is by restricting cross-examination of one of the district attorney's experts, Dr. Nelson, with respects to a test that she had initially relied on. May I ask you a question? Absolutely. Has the original commitment expired? Yes. And then he was recommitted after what, after another trial? Yes. So why isn't this loose? That was actually the first question that I looked into, even though it wasn't briefed in either brief. And I also was appointed a few weeks ago for purposes of oral argument, so I did not write the briefs. And what I discovered in circuit precedent, in particular case Rose v. Mayburg, is that the Ninth Circuit has rejected, specifically for challenges, mootness challenges made to determinations under the SVPA, that a challenge to a recommitment proceeding, a commitment or a recommitment proceeding, is not moot because, well, for two grounds. One is that it's capable of repetition and it would otherwise evade review. But the second is that each subsequent commitment is predicated on the legality of the prior. So if you, if this court ---- You mean that if the first commitment was illegal because the jury saw the shackles, they can't commit him again? No. What it would mean is that he would get a new recommitment hearing. Well, why? What's wrong with the second recommitment hearing? The second one isn't being challenged. And, again, with the ---- The second one what? Isn't? The second one isn't. Well, the second one isn't. The second recommitment hearing isn't being challenged, at least in this case. But I thought you just told us that if the first one goes, the second one automatically disappears. Yes. Which is why ---- Which case says that? Rose v. Mayburg. Rose v. That doesn't make a lot of sense, does it? Well, I think the ---- it makes sense to the extent that, first of all, the SVPA requires that an inmate or an inmate ---- everybody invokes the parlance of criminal cases in this scheme, in the statutory scheme ---- but in that an inmate or an individual who's committed under the SVPA must be in custody at the time that these proceedings are initiated. And so if his prior custody was invalid because his hearing was unconstitutional, then what it would do is it would invalidate each subsequent determination that a proceeding ---- Then you can't use the procedure at all. If the first one goes, you can never go after him because he's not in custody. No. No, that's not ---- the way it would work, as I understand it, is ---- and, again, the discussion in the Rose case is very short, and it's in a footnote. But the way I understand it is what it would do is because each ---- each recommitment hearing, subsequent recommitment hearing is predicated on the validity of the prior one, that if the prior one goes, then he gets a repeat of the prior one. So in effect, he goes back to his ---- That really makes no sense. He still may be subject to recommitment if a determination is made by a jury that he qualifies under the statute, but the subsequent ---- So he's in constructive custody after the first ---- in front of the first one that disappeared, but fine. Yes. So the ---- Rube Goldberg. You ever heard of Rube Goldberg? Rose v. Mayberg, M-A-B-E-R? M-A-Y. I have all of the mootness cases back ---- Can you read us the footnote? Are you saying it's in the footnote? Oh, okay. If you ---- you know what? I might have it in my notes here. I can go back to there and get it. Go get it. Go get it. Go get it. You know where I have the footnotes? It's Holdings? Yes. It's Rose v. Mayberg. Rose v. Mayberg says that each subsequent recommitment proceeding depends on the legality of the prior ones. And second ---- Is that your description of the case? What does the case say? If you don't mind ---- No, get it. And what a stupid clause. Right. I don't know. But you know what? I don't think you can put Holdings in footnotes. I just ---- I ignore them. Well, I always say if it's important enough, it should be in the text. If it's not, then it's not a Holdings. Then don't put it in the footnote. Well, I wrote this about that footnote. Stick that. No. If you want me to, she'll help underway. I'll know the footnotes. I don't think she can find it. Go back on the microphone. Go back. Oh, you do have it. I do have it, yes. I did bring it to the table with me after all. The ---- okay. The precise language is footnote 1. And the cite to the case is 454 F. 3rd, 958. And it says that the ---- that the footnote is in the footnote. And it says that the ---- because the 2003 and the ---- in this case, the individual was challenging a 2001 commitment, and the court ---- and he had been subsequently recommitted twice. And what the court said was because the 2003 and 2005 SVPA petitions depend on the legality of the 2001 SVPA petition, the claim is not moved. And there's another ---- They didn't say why they depended on the legality. Right. Well, this one may not depend on the legality. Well, and the ---- there's a two other ---- one other case that Jackson v. California Department of Mental Health involved an extended discussion that's somewhat analogous on distinguishing between standing and mootness. And so there, there was an argument also that the claim might be moved or that the court might not have jurisdiction. And what the court ultimately concluded is that although mootness wasn't an issue, there was a standing issue because he hadn't been in custody at the time that he filed this Federal petition, or at least the custody that he was challenging. Well, anyway, as far as the other grounds for mootness, I mean, there's no possibility, I would assume, that this same error is going to recur because now the law is clear. And the error here really is applying the wrong standard, which was not clearly established at that time. Now it is clearly established. So we can assume that there ---- knowing what went on in this case, the State court's not going to bring him in handcuffs and present him to the jury. So there's no real danger of repetition of this violation. Right. I suspect, unless we had a judge that was completely absent in the job, that would be the case. He wouldn't have a repeat in shackling. The Deck case was decided until 2005, and it wasn't clearly established until then that you couldn't do this. So if it wasn't clearly established, how can you possibly prevail on habeas? Well, the Deck v. Missouri hadn't been decided, but Illinois v. Allen had. And Illinois v. Allen had established that shackling created due process problems. Well, but the Court said it was a due process problem here, but that it wasn't prejudicial and that it applied the wrong standard to reach that. They didn't apply Chapman. And that wasn't clearly established, that you had to apply Chapman until Deck. In fact, it really wasn't established that you had to apply it to this type of proceeding, although the State court said you did. What about the other claim on the PPG testing? On the PPG testing? The argument for the PPG testing dovetails with the first issue. And the prejudice that stemmed from requiring him to be taken before the court, before a jury, in full shackles. And the argument there is simply that the expert, the State's case here, the district attorney's case here, was based on, predicated on two experts who testified that this individual was likely to reoffend, to commit a sexually violent offense again. And those two experts formed the crux of the case. And one of the experts, what had happened originally, both experts had relied on this PPG test, which when challenged by defense counsel the State conceded would not satisfy Kelly Fry because it was a methodology that was not in general acceptance by the relevant community of experts. The so the court excluded it. So the question here then is whether his defense counsel sought to cross I missed a step. Dr. Nelson testified at the probable cause hearing about six months prior to the actual trial that the she had relied, she had reached her conclusion that he was likely to reoffend, that he was likely to reoffend based on her evaluation of the results of the PPG test. The court then, after the PPG test is challenged, the court said you can't rely on that. Experts are not, sustained the challenge and said it's not a reliable test. We're not going to, you can't rely on it. So the court then, when she testified, she then said that the basis for her opinion in determining that he was not, that he was likely to reoffend was based on his social history and his performance at Atascadero. She said even without the test she reached the same. Yes. That was at the 402 hearing. There were three times that she testified. She testified at the probable cause hearing. She testified, and that was where she said that she relied on the PPG test. She testified at the 402 hearing where she said it was an important but not crucial part of her, a basis for her opinion. And based on that, the judge then allowed her to testify at trial. And then at trial she didn't mention it and she said it was based on his social history and his, this, his profile under this actuarial assessment of risk. And he accepted that. Excuse me? The judge accepted that. Yes. And so the judge accepted that. And so the argument that the defense counsel made was this violated his due process rights to confront and to cross-examine the expert on this issue. Now, I noticed in the briefs there was a lot of implication of confrontation clause cases pursuant to the Sixth Amendment. And those cases are not applicable here because this is a civil proceeding. But the Supreme Court has held that the due process clause, rather than the confrontation clause of the Sixth Amendment, guarantees a right to confront and cross-examine experts in civil commitment hearings because of the liberty interest that's at stake. And so that is the framework that it would be assessed under. So the argument then that he made was that he was unable to effectively cross-examine  her, her testimony was critical because the statute requires two expert opinions. Why was he unable to cross-examine her? With respect to her original, both respect, with respect to her original reliance on the PPG test and also as an inconsistent, as her trial, he was seeking to do two things. One, to impeach her because she had originally relied on this test, which the State conceded was not reliable. The second was, the second basis was that she had testified at the probable cause hearing that her opinion was informed solely on the PPG test, and then subsequently at trial she's saying something else. And it's not 100 percent inconsistent, but there's certainly inconsistencies there. And because the case rose entirely, rose and fell entirely on the credibility of the experts and the, and their inherently subjective opinion as to whether he's likely to reoffend, and then the argument was, the defense argued that his due process rights were violated because he wasn't. Is the second commitment hearing being appealed? The second recommitment hearing? He did appeal the second recommitment hearing. And all I know is from, literally from the West law search, there's a State court opinion where he challenged a jury instruction with respect to the second recommitment hearing. I don't know if there are habeas petitions that are in, that are in motion at this time, and I haven't seen anything with respect to the later hearings. Okay. So the Court did not want me to address the substance of the first issue at all? Well, I don't. I think we understand it. Yeah. Okay. And you're over your time. Thank you. Thank you. Good morning. Douglas Danzig on behalf of the pulley. In order to clarify for the Court's benefit, the landscape has changed on, as you know, the three key commitments in California. They're now indeterminate. And the best information I was able to gather is that Mr. Rawls is currently under an indeterminate commitment that was a result of a March 07 petition for recommitment. That's the second one? Do you think that's the second one? No, I believe there's another one in between. Oh, okay. Do you think the current one would be invalidated if the appeal were upheld on the first one? I don't see how. Well, I don't either. There's some language. Did you ever hear about the language in the footnote? No, I haven't. I've not read Rose being naggered. Yeah. Well, I mean, it doesn't sound like – it sounds like just from the footnote it might not be a principle of law that each successive one is legally dependent. It might be that in that particular case it was – that's what it could be either or. So what is your position on muteness of the current appeal? Well, I think given the change in landscape and the indeterminate sentencing or the indeterminate commitment proceedings now that this is moved. I don't see how it could ever go back. Even without a change in the landscape, I don't know why it wouldn't have been moved. Arguably, and this Court has set precedent for that back at least in 2005 in Cardi B. Nelson, 426 Fed 3rd 106-4. Which holds what? That these type of petitions and civil commitments are not moved because they're capable of repetition. That depends on what's capable of repetition. Depends on what the area is. Correct. But in those days it was an every-two-year process. And so the Court was concerned with the fact that someone might escape a remedy if there was a subsequent commitment given how long these cases take and how long the appeals take. Yes, that makes sense. But then you have to look at the error. Is that error capable of repetition and likely to escape review? Correct. Well, if it's not an error that's likely to be repeated. Then it may be very well moved. Otherwise, what is the point of saying, yes, that first procedure was invalid? Meanwhile, you've got another procedure. Because you can't redress it. I agree with you. It's our ability to redress it, even if we were to rule that it was error. I agree. How do we redress it at this point? I do believe that this is moved. I did want to provide the Court with just a few pieces more of additional information. Yeah, tell me, why was there no class examination on the PPG test? Or how did the expert come to her conclusion? Well, in order to clarify, the State had never conceded, nor did it concede at the commitment hearing, that the PPG test is not a valid or reliable test. What the prosecutor said was when the defense attorney said, I don't think it passes Kelly-Frey, the prosecutor said, I'm not prepared to show or establish that it does. So we don't know whether the prosecutor felt it was reliable or not, nor do we really know, based on this record, whether that test is in the abstract reliable. No, but I guess an expert testified as to the basis for her conclusion. She said that it has an effect on her conclusion. At the probable cause hearing, she said this did play into her evaluation that he was dangerous and that he was likely to reoffend. I thought that when he testified at the final proceeding, he or she said it was based on something else other than that. Well, she was told not to mention it, not to discuss it. And there was an interim hearing, a 402 hearing, outside the presence of the jury, where the court explored the question of whether this was an issue that should or should not be before the jury. And the court not only ruled that the doctor did not significantly rely on it as a basis for her opinion, the court also ruled under California Evidence Code 352 that this was a trivial matter of impeachment and simply involved an undue consumption of time and possible confusion of the issues. Okay. And on the other one, the appearing in shackles, I assume that's not likely to occur again. I assume so, too. Although we don't know what happens at the second or third commitment. No, we don't. And, boy, I'm really on dangerous thin ice here, but at the risk of snatching defeat from the jaws of victory. The theme of today. We'd like to reassert a point we made in our brief. We do not believe that the precedent is firmly established. DEC said no shackles in criminal trials absent an independent case-by-case analysis as to whether there is particularized analysis. It has not extended it to civil commitment proceedings. But the California court did in that case, in his case. We simply think the California court was wrong when it said that shackling principles apply to civil commitment proceedings. It may have been right. It may have been wrong. Our point is that under the AEDPA, the Supreme Court hasn't extended it to that extent yet. Now, it's not a matter of general rule. I think we understand that. I tried that in the Heidrich case. It didn't get anywhere, but it's come back. I did want to just finish off on that point. The Supreme Court has made a distinction for due process purposes. At least in terms of standard of proof in civil commitment proceedings. But if California wants to apply it to civil proceedings, who are we to interfere with the state of California? We don't know whether the California Supreme Court has not ruled on it. We have a statement in this case that this district court of appeal found that it applied. Well, that's the highest court that considered it. So far. California courts are wonderful courts. And we certainly wouldn't tell them they can't apply it. I still assert that the precedent is not firmly established for AEDPA purposes. But there's no dispute about that here. That's what the California court did. That's correct. And we have no, there's no, you don't want us to quarrel with it. No. That's good. At the risk of, yeah. As I started to say a few minutes ago, I did want to give the court a little bit of additional information. Our information is that Mr. Rawls has a new court date coming up in February, February 2nd of 2010. We do not know, I have not been able to determine yet, what is the purpose, what the issues are that are going to, what kind of a hearing it is, what issues are to be addressed. I don't know if it's a recommitment proceeding or some other sort of action under the current indeterminacy. So if it's indeterminate, that means they have periodic? Under the California statutes, once a year, the Department of Mental Health has to evaluate them and determine whether or not they should be submitted for a probable cause hearing for possible release. Also under California statutes, the Petitioner, or pardon me, the Respondent may also move for that. Okay. If the Court has no further questions. Thank you very much. Just briefly, very briefly, for the mootness issue, I would ask that if the Court is inclined to remand the case on mootness, or excuse me, if the Court is inclined to rule on mootness because it was not briefed and because there was no fact development with respect to the claim. You don't know anything about what happened in the subsequent hearings. So if the Court were to conclude that Rose v. Maberg did not foreclose a mootness argument here, then the onus should be on the district attorney to show that the subsequent hearings were not at all impacted by the finding that was made in this particular hearing. Because at the time of this particular hearing, Mr. Rawls was in a different situation than he may be in perhaps today. I don't, and again, I don't know any of the facts that have unfolded since then, but I know that at the 2001 hearing, and this actually goes to my second point just briefly, is with respect to Brecht's analysis under the second issue, is this was not a case in which, particularly when we're talking about the type of individuals that are committed under this statute, this is not a case in which the evidence was overwhelming. His two prior convictions were old, and he had come into, the experts had both testified, he had come into a Tascadero and had undergone all of the provided treatment programs for narcotics and alcohol abuse, that he had been diagnosed with bipolar manic disorder and was being properly medicated for the first time in his life for that, and that he had expressed to them his own awareness that his mental illness coupled with his substance abuse had been responsible for his, all of the mistakes that he had made in the past. That's not so true. Unless there's some rule that says you can never again be tried, if there have been two separate proceedings between now and then, and so maybe let's assume the worst, that he was unconstitutionally found, committed the first time. What are we going to do about the second and third trials? I think, and again, at the risk of repeating myself, the remedy would be that he was entitled to this particular hearing, and he was denied that hearing because of the shackling and the restriction on cross-examination. And so what do you do about it? He gets a new hearing. Which third hearing do you want to throw out? Because of what? Because they're premised on the prior hearing. I don't know what premised on means. Well, the statute requires continuous custody and continuous, that he be legally been continuously held in custody in order to actually civilly commit him. Does the statute require continuous legal custody? Well, that he's in custody. I do not know the answer to that question. It's not something I've seen any authority on. So you say that there wouldn't have been a second hearing if there had not been the first commitment, and there wouldn't have been the third? Well, this actually was his second hearing. This was his first recommitment hearing, but his second hearing. He had been committed, then two years later he had a recommitment hearing, and then subsequently he's had the two years. And then as Mr. Danzig indicated, Proposition 83 changed it to an indeterminate term rather than the two-year term. Do district attorneys handle these hearings or deputy attorney general? District attorneys. District attorneys do. The attorney general takes over for appeal purposes. And so we'll call the third and fourth hearings, which are the two that have taken place. They would not have occurred had it not been for the current commitment, the one that you're complaining about. Yes. It wouldn't have been the second. Yes. All right. Thanks very much. Thank you. Thank you both. The case is currently submitted.  Thank you. Thank you. Thank you. Thank you. Thank you. I don't know if she needs those. Oh, okay. Thank you.
judges: Reinhardt, Trott, Wardlaw